## MORGAN TULLY V. THE STATE.

No. 16132.   Delivered November 22, 1933.
State's Rehearing Denied, Without Written Opinion, January 24, 1934.
Reported in 67 S. W. (2d) 272.

The opinion states the case.

*Owsley & Owsley,* of Denton, and *Ivan Irwin* and *Taylor & Irwin,* all of Dallas, for appellant.

*Robt. H. Hopkins* and *Earl Street,* Special Prosecutors, and *Judge Gambill,* Co. Atty., all of Denton, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for assault to murder; punishment, five years in the penitentiary.

Two brothers by the name of Smith lived in Denton county two or three hundred yards north from Cottonwood Creek. On the night of October 13, 1932, soon after dark, a pistol was fired through a front window of the house, the bullet striking a board near the mantel. In a few minutes a car was observed going along the road north from the direction of Cottonwood Creek, passing the Smith brothers home and going several hundred yards to the north where it turned and came back to said house and stopped. After the firing the Smith boys made a good deal of noise and some of their neighbors came with guns, and were lying in the grass in front of the house when said car stopped. They rose up with guns in their hands and ordered the occupants of the car to throw up their hands. In the car were appellant and Lee Taylor. There were two pistols in the car which was being driven by appellant. Each of the occupants in the car seems to have had a pistol. When ordered to

get out and throw up their hands, appellant got out of the car from under the wheel, holding his pistol by the muzzle, and laid it on the ground. A state witness testified that the pistol was loaded all around at the time. Another state witness testified that he later saw Taylor's pistol lying in the car and examined it, and that one shell had been freshly shot.

It is admitted that appellant and his companion were strangers to the Smith brothers. We find nothing in the record suggesting any tangible motive for the shooting, other than that suggested by the testimony of appellant, which will be later referred to. Eugene Smith, one of the Smith brothers referred to, testified that he went out and got some wood and threw it on the fire in his house, and that the first thing he knew there was a flash-light came in the window followed by a gun flash and the breaking of glass. Nothing indicates that he or his brother then saw or had seen appellant and his companion, or that they saw them at all until after they came back down the road and stopped the car in front of the Smith brothers home.

Appellant testified that he and Taylor lived in Dallas and were chums. He said that he had been working at the plumbing trade, but had no work to do on the day of this occurrence. He further testified that he had been asked by the officers of Dallas to assist them in locating caches of whisky and that he and Taylor were complimented by this request. He testified that having no work to do, he got with Taylor and they decided to go fishing up toward Denton county and incidentally to see if they could locate some caches of whisky. They went to the place of a Mexican whom they suspected of selling liquor and bought from him a small quantity, one of them doing the purchasing while the other was to watch the Mexican and see where he got it. They failed to find the place where the Mexican had it hid. They went on fishing with the whisky they had bought, which they proceeded to drink. He testified to their driving up and down the road a number of times, and that both himself and Taylor were under the influence of liquor. One time that day they returned to Dallas, but later came back out on Lake Dallas which extends up into Denton county. Further, that about night they passed by a house which turned out to be the home of the Smith brothers; drove their car down on Cottonwood Creek and left it, and went on foot to explore the premises surrounding Smith brothers house with the idea that it was a likely looking place where they might find whisky. He said they went up through the field, past the stacks and into the yard. When they entered the yard they separated, he going to the back of the house and Taylor going to the front. When

he got to the back of the house he discovered a cellar which he further thought was a likely place in which he might find whisky, and was about to enter it when he heard a pistol shot around at the front of the house. He ran back toward the car and was joined by Taylor. He further said they got in the car and Taylor told him that when he went up to the front and started to tap on the window he accidentally fired a shot. They got in the car and turned on the lights and started up past the house from Cottonwood Creek, and after they had passed the house they decided they had better turn around and go back and see if anybody had been accidentally shot. They turned the car around and came back and stopped the car in front of the Smith brothers house and about this time some men rose up and took charge of them. To some extent the testimony of appellant was corroborated by the witnesses for the state. As above stated, Mr. Smith testified that when he raised up from throwing wood on the fire a flash light came in his window, and then the flash of a gun, and the glass broke. A lady, Mrs. Dennis, testified for the state that just after dark she went along the road in front of the Smith brothers home and across Cottonwood Creek. She saw a car parked near said creek in which there were no occupants. This would evidently be in the direction from which appellant said he and Taylor went when they reconnoitered the premises of the Smith brothers. A number of state witnesses testified to seeing tracks in the field going from the direction of Cottonwood Creek up to the home of the Smith brothers, into which tracks the next day were fitted the shoes taken from the feet of appellant and Taylor. These witnesses said the tracks went up to the yard of the Smiths, but in the yard was Bermuda grass and they could not see any tracks in same. They also testified that the tracks coming back from the Smith brothers place down toward the car were further apart than the tracks going toward said house. This would appear to support the proposition that the parties were running when they came back toward the car. Practically all of the witnesses for the state testified that as the car came from Cottonwood Creek up toward the Smith brothers house its lights were on. There was no dispute over the fact that after going some hundred yards up the road beyond the Smith brothers, the car occupied by appellant and Taylor was turned around by appellant and driven back to the Smith brothers house where appellant stopped it before any one ordered him to stop. Nor does there seem any dispute of the proposition that the pistol of Taylor was the one which was fired, and that appellant's pistol had not been fired.

Ten witnesses for appellant who had known him and worked with him in Dallas, testified to his good reputation for being an honest, law-abiding citizen against whom there had never been any charge of violating the law. No one for the state contradicted or in anywise rebutted his possession of such good character.

The court gave a charge which seems to us to be a very admirable presentation of the law both of the theories of the state and those of the accused.

The jury's verdict finding appellant guilty of assault to murder and fixing a penalty of five years, evidences the fact that they found him guilty upon malice aforethought. We hesitate always to disturb the verdict of the jury, but when we find a record seemingly devoid of anything reasonably supporting the jury's conclusion, such as seems the case here, this court has no option but to direct a reversal. We have set out at some length the facts as supporting the conclusion that nothing in the case reasonably showed the existence of any malice on the part of this appellant. While the jury do not have to accept his story and are themselves made by law the judges of the credibility of the witnesses and the weight of their testimony, still there must be some testimony upon which can be based a conclusion of malice before a judgment of guilt of assault to murder upon malice can be upheld by us. As above stated, it appears beyond controversy that Taylor fired the shot. The court submitted the case upon the law of principals. We fail to find anything in this record supporting the proposition that appellant was present when Taylor fired the pistol. Nothing in the record suggests that appellant and Taylor had conspired together, or had agreed to make any assault upon either of the Smiths, or that Taylor's firing or intended firing of such pistol, if any, was known by or agreed to by appellant. The fact that they ran back to their car after the shooting without any sort of effort to investigate the result of the shooting, seems strongly to support the proposition that there was no intentional firing into the building. The fact that they turned on the lights of their car and drove, as one witness said, at the rate of about twelve or fifteen miles per hour past Smith brothers home, and after going two or three hundred yards up the road they turned and drove back to the house and stopped,—would seem to rebut any proposition such as that they had fired with intent to kill and were trying to make their escape.

The court submitted the case properly upon the law of circumstantial evidence, and in such case, as said by the court in its charge, it is not enough that the circumstances in evidence

coincide with and render probable the guilt of the accused, but they must exclude beyond a reasonable doubt every other reasonable hypothesis. We have searched for evidence so excluding very other reasonable hypothesis except that this appellant either alone or acting with Taylor fired a shot through the window in the darkness with malice, and fail to find it.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*